UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-20051 |
| ) | |
| EDMUNDO MANRIQUEZ-ALVARADO, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant Edmundo Manriquez-Alvarado's *pro se* Motion for Compassionate Release and Amended Motion for Compassionate Release requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). (Docs. 21 and 22). For the reasons set forth below, Defendant's Motions are DENIED.

### BACKGROUND

On August 21, 2018, Defendant was apprehended in the Central District of Illinois for illegally re-entering the United States. (Case No. 18-20045; D. 24 at ¶ 1). Defendant, a citizen of Mexico, had been deported and removed from the United States on five prior occasions. *Id*.

In September 2018, a federal grand jury returned an indictment charging Defendant with illegal re-entry after prior deportation in violation of 8 U.S.C. § 1326(a). (Case No. 18-20045; D. 1). Revocation proceedings from Defendant's prior federal drug trafficking felony were transferred from the District of Arizona to the Central District of Illinois. (Case No. 18-20051; D. 1).

In April 2019, Defendant pled guilty pursuant to a written plea agreement. (Case No. 18-20045; D. 16). On July 31, 2019, this Court sentenced Defendant to 39 months of imprisonment. (Case No. 18-20045; D. 28). On December 3, 2019, Defendant's supervised release was revoked,

and he was sentenced to a concurrent term of 18 months of imprisonment. (Case No. 18-20051; D. 18).

Defendant is currently incarcerated at USP Yazoo City in Yazoo City, Mississippi. (D. 22 at 2). His projected release date is March 29, 2021. *Id*. He will most likely be deported after he is released. *Id*. at 2-3.

In his Amended Motion, Defendant states that he submitted a written request for compassionate release to the Warden at USP Yazoo City. *Id*. at 1. To date, he has not received a response. *Id*. On September 30, 2020, Defendant filed a *pro se* Motion for Compassionate Release. (D. 21). The Court appointed the Federal Public Defender's Office to represent him. On October 7, 2020, counsel filed an Amended Motion for Compassionate Release. (D. 22). On October 13, 2020, the Government filed its Response in opposition. (D. 24). This Order follows.

## LEGAL STANDARD

Generally, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. *See* 18 U.S.C. § 3582(c). Several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. *See* 18 U.S.C. § 3528(c)(1)(A).

Before filing a motion for compassionate release, a defendant is required to first request that the Bureau of Prisons (BOP) file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

A court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). The policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with the policy statement." USSG § 1B1.13. The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons."

If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." A chronic condition (*i.e.*, one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. USSG § 1B1.13, cmt. n.1(A)(ii)(1).

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *United States v. Melgarejo*, 2020 WL 2395982, at *5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain

the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id.* at 5–6.

## DISCUSSION

Generally, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. *See* 18 U.S.C. § 3582(c). Several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. *See* 18 U.S.C. § 3528(c)(1)(A). Since the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A), an inmate is allowed to file a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for the BOP to file a motion or after waiting thirty days from when the inmate's request was received by the BOP, whichever is earlier. The statute states as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3528(c)(1)(A).

### I.   Exhaustion of Administrative Remedies

The parties do not agree that Defendant exhausted his administrative remedies under 18 U.S.C. § 3582(c)(1)(A) before filing a Motion for Compassionate Release. In his Amended Motion, Defendant states that he asked the Warden at his facility for a sentence modification, in

writing, over thirty days ago, but he has not received a response. (D. 22 at 1). The Government argues that Defendant presented no evidence that he submitted a request for compassionate release to the Warden, and as a result, his Motion should be denied with leave to refile after he pursues his administrative remedies. (D. 24 at 31).

The Supreme Court has held "'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *McKart v. United States*, 395 U.S. 185, 193 (1969) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938). The doctrine is applied in numerous situations and, like many judicial doctrines, is subject to exceptions. *McKart*, 395 U.S. at 193.

The Court accepts as true the representations of counsel in Defendant's Amended Motion, but unlike many other motions this Court has reviewed, there is no written request attached as an exhibit to substantiate the representation that Defendant made a written request to the Warden. Regardless of whether he made a request, this Court may waive the exhaustion requirement if it is appropriate to do so.

Since COVID-19 has wreaked havoc on this country, many federal judges, including those in the Central District of Illinois, have considered this issue. Some judges have found that they have the discretion to waive the 30-day requirement in light of the serious risks associated with COVID-19. *See e.g. United States v. Anderson*, 2020 WL 2521513 (C.D. Ill. May 18, 2020); *United States v. Scparta*, 2020 WL 1910481 (S.D.N.Y. Apr. 19, 2020); *United States v. Guzman Soto*, 2020 WL 195323 (D. Mass. Apr. 17, 2020); *Untied States v. Russo*, 2020 WL 1862294 (S.D.N.Y. Apr. 14, 2020); *United State v. Smith*, 2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020); *United State v. Hanley*, 2020 WL 1821988, at *1 (S.D.N.Y. Apr. 13, 2020); *United States v. McCarthy*, 2020 WL 1698732 (D. Conn. Apr. 8, 2020).

Other judges have held that the 30-day requirement is mandatory, not subject to exception. *See e.g. United States v. Cox*, 2020 WL 1923220, at *1 (S.D. Ind. Apr. 21, 2020); *United States v. Demaria*, 2020 WL 1888910 (S.D.N.Y. Apr. 16, 2020); *United States v. Rensing*, 2020 WL 1847782 at *1 (S.D.N.Y. Apr. 13, 2020); *United States v. Roberts*, 2020 WL 1700032 at *2 (S.D.N.Y. Apr. 8, 2020).

The Seventh Circuit has not yet directly addressed the division, but the Central District of Illinois has previously interpreted Section 3582(c)(1)(A) to not require an inmate to fully exhaust BOP procedures before coming to court, in some circumstances, stating:

> While a court may certainly decline to consider a motion where Defendant has not waited thirty days, nothing in the statutory scheme suggests that Congress intended to preclude the court from exercising judicial discretion and to take into account timeliness and exigent circumstances related to why the defendant seeks compassionate release.

*Anderson*, 2020 WL 2521513 at *4.

Based on the House Report for the First Step Act, the statute is designed to "enhance public safety and security." H.R. 115-699 at 22; *Id.* To automatically deny Defendant's Motion without reaching the merits, could frustrate that purpose. Even if the Court waived the exhaustion requirement, Defendant is otherwise ineligible for compassionate release.

## II.     Eligibility for Compassionate Release

Defendant seeks compassionate release because, based on demographics, he faces an increased risk of illness from COVID-19. (D. 22 at 3). Defendant is Mexican, and according to the CDC, Hispanics have a hospitalization rate due to COVID-19 that is approximately 4.6 times higher than non-Hispanic people. *Id*. at 2. *See* https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html. The Government

argues that Defendant's Motion should be denied because Defendant has not presented any health condition that places him at greater risk. (D. 24 at 13).

Currently, two inmates and seven staff members at USP – Yazoo City are positive for COVID-19. One inmate died and 89 have recovered. *See* Federal Bureau of Prisons, COVID-19 Coronavirus (Nov. 16, 2020), https://www.bop.gov/coronavirus/.

Regardless of whether the BOP has the outbreak under control, the fact remains that Defendant has no underlying condition that puts him at a higher risk. He is a healthy 35-year-old. The mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release. *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020). If it could, every inmate in that prison could obtain release. *Melgarejo*, 2020 WL 2395982, at *3. The pandemic does not even "warrant the release of every federal prisoner with health conditions that makes him more susceptible to the disease." *United States v. Collins*, 2020 WL 2301217, at *2 (C.D. Ill. May 8, 2020). Under certain scenarios, the presence of a serious and uncontrolled COVID-19 outbreak in a particular prison may be grounds constituting an extraordinary and compelling reason for compassionate release, such as where an inmate is over age 65 and suffers from several health conditions that place him at great risk from COVID-19. *See Melgarejo*, 2020 WL 2395982, at *3; *United States v. Cabrera*, 2020 WL 2549941, at *4 (C.D. Ill. May 19, 2020); *United States v. Brooks*, 2020 WL 2509107, at *5-6 (C.D. Ill. May 15, 2020). Defendant is not in any of the high-risk groups associated with COVID-19. Therefore, the Court finds that he has failed to demonstrate extraordinary and compelling reasons warranting a sentence reduction.

### III.    The § 3553(a) factors do not warrant a sentence reduction.

Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. *See* 18 U.S.C. § 3582(c)(1)(A).

Based on Defendant's history and characteristics, the Court finds that he is a danger to the safety of the community under 18 U.S.C. § 3142(g) and the § 3553(a) factors do not warrant a sentence reduction. Defendant is serving an 18-month sentence in addition to a 39-month sentence because he violated the terms of his supervised release. Defendant has been deported five times, and each time he returns to this country, he commits additional offenses. In addition to multiple felony convictions for illegal re-entry after prior deportation, Defendant has convictions for drug trafficking (federal conviction for drug trafficking conspiracy), property crimes (burglary), and crimes of endangerment (domestic violence, reckless driving, and leaving the scene of an accident). (Case No. 18-20045; D. 24, ¶¶ 25-33). Most recently, Defendant was apprehended on August 21, 2018, while he was on supervised release for his prior conviction. *Id.* at ¶¶ 4-8, 33. Defendant's history shows that deportation and time spent in prison for prior offenses has not altered his behavior. Reducing Defendant's sentence and granting release would not reflect the seriousness of his offense, promote respect for the law, or provide just punishment for Defendant.

#### CONCLUSION

Defendant's Motions for Compassionate Release [21], [22] are DENIED.

ENTERED this 16th day of November, 2020.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge
